DAVE FRANKLIN JARVIS V. THE STATE.

No. 23758. Delivered October 8, 1947.

*Hardin, Bransford & Hardin*, of Fort Worth, for appellant.

*Alfred M. Clyde*, Criminal District Attorney, *Ardell M. Young, Joe Shannon* and *W. E. Myres*, Assistant Criminal District Attorneys, all of Fort Worth, and *Ernest S. Goens*, State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was given a sentence of twenty-five years for murder.

We find twenty-three bills of exception in the record, but do not consider it necessary to discuss any except Bill No. 1 which raises the question as to the sufficiency of the evidence to support the jury's verdict.

The case was tried below and briefed in this court with much emphasis on the brutal nature of the crime committed. It is not the view of the writer that this affects in any way the question as to the sufficiency of the evidence. It will require the same evidence to sustain a conviction for a crime of this nature as it would for one less heinous. Our consideration will not deal with that phase of the case but only with the sufficiency of the evidence to sustain the jury's verdict that the murder was committed by appellant.

Both appellant and deceased, Ivan Pools, were men with criminal records and had been constant associates for some time. The murder was committed between four and five o'clock on the morning of May 30th, 1946. There is no evidence as to the origin of the difficulty. The State's theory was that the motive was robbery. The deceased and appellant had been seen together during the night, and up until one-thirty or two o'clock in the morning, in and about the City of Dallas. At this late hour it is in evidence that the deceased desired to go to Ft. Worth and had requested appellant to go with him. They left a cafe and walked to the car belonging to deceased but the State's evidence fails to show that appellant got in and left that place with the deceased. The defense evidence is that he walked away and did not enter the car to leave with the deceased.

Some two or three hours after the departure a family in a residence near the Dallas and Ft. Worth highway, in Tarrant County, were awakened by the skidding of automobile tires, a cry of distress, and the emerging of deceased from the car as it stopped, from which he ran into the yard and driveway where he fell dead. The cause of his death was a gun shot wound. The car then proceeded to travel in an easterly direction towards Dallas. The officers obtained a description of deceased's car and at once placed a call for it over the radio. Early the next morning a blood saturated suit of clothing was found on the highway near the City of Dallas. This was later identified as a suit belonging to appellant. The State has no direct proof that this

suit of clothing came out of deceased's car, but appellant himself testified that the deceased had picked up the suit for him from a laundry some days before and places that particular suit in the possession of the deceased. Blood on the suit and that on other articles found in the car was examined by the Department of Public Safety, at Austin, and found to be human blood of the same type. From this we think the jury was authorized to conclude that the suit of clothes thus found belonged to appellant and that it was in the car at the time of the murder. A money clip and fountain pen were found in the coat pocket of appellant's bloody suit and identified by parties as being just like the same articles which belonged to the deceased. Appellant identified the money clip as belonging to deceased and said, "He used it to carry some of his money in. I don't know how that money clip got in these clothes I say are mine, I didn't know it was in them." It is also shown that the deceased had considerable money and a diamond stickpin immediately prior to the murder. Less than five dollars was found on his person and the diamond pin was gone. A few days later appellant's attorney, who does not appear on the brief on appeal, phoned the sheriff to tell him the street and block in which they would find the car. He testified in the case that he was called by someone who did not give his name and who admitted the murder and told him where he would find the car. The information as to the location of the car was then reported to the sheriff who took possession of it and produced evidence in the case sufficient to sustain the conclusion that the murdered man had first been wounded and locked in the turtle-back of the car, that in an effort to extricate himself he had tried to loosen the screws holding the lock, and that he did succeed in breaking through the back seat of the car and escaping from his imprisonment. It is the State's theory that at this juncture the car was skidded, the deceased was shot and ejected from the car. The nature of other wounds, which would account for the great amount of blood in the turtle-back of the car, described by a physician consisted of gun shot wounds and abrasions about the body made by some unknown means. A package of laundry and a suit of clothes were found in the turtle-back much saturated in blood.

A few days thereafter, and before the arrest of appellant, a party giving his name as Bob Jackson left a suit of clothes with a cleaner and was supposed to call for it—which he never did. This suit was identified as belonging to the deceased, Ivan Poole, and being one of the two suits which he secured from the laundry the day prior to the murder. A lady in the office who received the suit identified appellant, among other in-

mates in the jail, as being the man who would fit the description of the party who brought the suit into the laundry. Her identification was not positive but that he was very much like the man.

Appellant lived at 1818 Sanger Avenue. He did not go to his room during that night. His plea was an alibi and he introduced the evidence of a woman to the effect that he came to her house about two o'clock in the morning, talked with her until four and retired without leaving the place until nine o'clock the next morning. He does not account for his whereabouts from that time until the time of his arrest. He was accompanied by a man to this woman's house, but such party was not presented as a witness. The State attacked the credibility of the women who testified to his alibi and the state of the record is such that the jury found against him on that issue. We think it was within their province to do so.

The foregoing constitutes the evidence in the record to connect appellant with the crime. He testifed in his own behalf, denied any knowledge of the murder, denied that he was without funds, avowed his personal friendship for Ivan Pools, his ability to secure funds without committing the murder, and denied that he even went to Ft. Worth with deceased on that night or that he saw him at any time after they parted upon leaving the cafe, as above stated.

The question of the sufficiency of this evidence has given us much concern. After close study, we find ourselves unable to say that the jury did not have any evidence upon which to connect appellant with the murder. The suit of clothes found belonged to appellant. Articles in the pocket belonged to the deceased. He was the last party seen with the deceased only a short time before the murder. Though it was several miles away, the car involved was present when they were last seen together and the distance traveled during the intervening time was a reasonable one. As a matter of fact it was traveled by the deceased in the very same car. It is the theory of the State, with some justification at least, that appellant committed the murder; that in doing so his own suit became saturated with blood; that he discarded this suit and used a suit of deceased found in the car, which had not become bloody; that he dispossessed himself of that suit by taking it to the laundry and leaving it in the name of Bob Jackson. Upon this evidence the jury found the appellant guilty and assessed a very mild penalty for the murder described. We cannot say that they had no evidence at

all upon which to reach their conclusion. Consequently the judgment of the trial court is affirmed.